IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**JAMES S.**,

      **Plaintiff,**

v.                                         Case No.: 2:24-cv-00157

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Irene C. Berger, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief and the Commissioner's Brief in Support of Defendant's Decision, which both seek judgment on the pleadings. (ECF Nos. 5, 6).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings, (ECF No. 5), be **DENIED**; the Commissioner's request for judgment on the pleadings, (ECF No. 6), be **GRANTED**; the Commissioner's

1

decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

I. **Procedural History**

In November 2018, Plaintiff James S. ("Claimant") protectively filed for DIB, alleging a disability onset date of January 1, 2003, due to "arthritis throughout body, knee problems – both knees, back problems, sciatic nerve problems – mainly right sided, gout, right hand goes numb at times, neck problems, high blood pressure, CTS in both [hands], and hernia in stomach." (Tr. at 236-44, 272). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on January 7, 2020, before the Honorable Jon Johnson, Administrative Law Judge. (Tr. at 64-86). The record remained open, and a second hearing was held on October 15, 2020, before the Honorable M. Drew Crislip, Administrative Law Judge ("the ALJ"), following ALJ Johnson's retirement. (Tr. at 24-63). By written decision dated October 21, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 11-23). After the Appeals Council declined review, Claimant filed an action in this Court, seeking judicial review pursuant to 42 U.S.C. § 405(g). While that action was pending, the Commissioner moved to remand the case to the Agency for further development of the record and reevaluation of Claimant's application. (Tr. at 499). The Court granted the motion to remand, and the Appeals Council vacated the Commissioner's final decision and remanded the case to the ALJ. (Tr. at 503). The ALJ was instructed to hold a new hearing and fully advise Claimant of his right to counsel; consider Claimant's RFC; and, if warranted by the expanded record, obtain evidence from a vocational expert. (*Id.*). On remand, a consultative internal medical examination was performed, and Plaintiff was sent a list of providers of free legal

representation. (Tr. 520-21, 655-56). The ALJ held a hearing on September 8, 2022, during which Claimant, as well as experts in internal medicine, psychology, and vocational matters, appeared and testified. (Tr. at 392-447). Claimant confirmed that he wanted to proceed *pro se*. (Tr. at 404-09, 413-14). On October 27, 2022, the ALJ issued an unfavorable decision. (Tr. at 373-91). The ALJ's decision became the final decision of the Commissioner on February 9, 2024, when the Appeals Council declined review. (Tr. at 366-72).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 3). Claimant filed a Brief, (ECF No. 5), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 6), both of which seek judgment on the pleadings. The time period within which Claimant could reply to the Commissioner's response has expired. Consequently, the matter is fully briefed and ready for resolution.

## II. **Claimant's Background**

Claimant was 36 years old on his alleged disability onset date and 43 years old on his date last insured. (Tr. at 93). He completed high school, communicates in English, and previously worked as an inventory tool clerk. (Tr. at 271, 273).

## III. **Summary of ALJ's Decision**

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

3

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills,

work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §

5

404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2009. (Tr. at 379, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity from his alleged disability onset date through his date last insured. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had medically determinable impairments of lumbar strain and right hip strain, but he did not have any severe impairments or combination of impairments. (Tr. at 379-85, Finding Nos. 3, 4). Consequently, the ALJ decided that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 385, Finding No. 5).

**IV.     Claimant's Challenges to the Commissioner's Decision**

Claimant does not assert any specific challenges to the Commissioner's decision. (ECF No. 5). Rather, he resubmitted the same written exceptions and personal statement that the Appeals Council considered. *Compare* (ECF No. 5 at 2-4) *with* (Tr. at 561-563). Claimant also submitted documents, including medical records, which are duplicative of information that the ALJ reviewed. *Compare* (ECF No. 5 at 6-66) *with* (Tr. at 254, 318, 330-31, 334-40, 344-53, 449-60, 462-80, 653). In response, the Commissioner argues that the ALJ's decision should be affirmed because it is supported by substantial evidence

and was reached through the application of the correct legal standard. (ECF No. 6).

## V. Relevant Evidence

The undersigned thoroughly examined the entire record. The evidence that is most pertinent to Claimant's challenges is summarized below.

### A. Treatment Records

Claimant presented to chiropractor Joseph Marinacci, D.C., on April 4, 2019, reporting cervical and lumbar discomfort that began one year earlier. (Tr. at 344). X-rays showed moderate degenerative disc disease at C4 through C7 and moderate to severe degenerative disc disease at L3 through S1. (Tr. at 345-46). Claimant was not seeking treatment at that time, but he requested to come as needed. (Tr. at 349). On April 16, 2019, Claimant presented to Ashish P. Sheth, M.D., at West Virginia Primary Care, stating that he suffered from persistent and worsening symptoms of bilateral shoulder pain and bilateral knee pain, as well as symptoms of chronic pain in his neck and low back and a history of hypertension. (Tr. at 350). On examination, Claimant did not exhibit spinal point tenderness, his straight leg raising was negative, and he appeared in no acute distress. (Tr. at 351). Claimant's diagnoses included essential hypertension, unspecified gout, unspecified osteoarthritis, shoulder pain, and body mass index 32.0-32.9. (*Id.*). He was prescribed medication. (Tr. at 352).

On February 26, 2002, Claimant sought chiropractic treatment after twisting his back while working under a car dash. (Tr. at 336). On examination, Claimant had some muscle spasms and palpatory tenderness in his low back, muscle tightness in the right hip, and positive Kemp's sign on the right. (*Id.*). Claimant experienced a subsequent flare-up of low back and right hip pain symptoms in July 2002 associated with bending over and working on cars at his job. (Tr. at 334). Jeffrey B. Given, D.C., found muscle spasms

7

and palpatory tenderness bilaterally in the mid-scapular, low back, and lumbosacral joint regions with an increase on the right. (Tr. at 334-35).

### B. Consultative Examination

Stephen Nutter, M.D., performed a consultative internal medicine examination of Claimant on May 18, 2022. Claimant reported a history of joint pain symptoms since 1990 associated with gout, causing pain in his hands, wrists, elbows, shoulders, hips, knees, ankles, and feet, as well as swelling in his hands, right elbow, right knee, feet, and toes. (Tr. 655). He reported gout flares occurring every two to three months in his hands and also described increased knee pain when walking, standing, kneeling, squatting, and using stairs. (*Id.*). Claimant complained of increased shoulder pain with reaching, lifting, pushing, pulling, and using his arms overhead. (*Id.*). He related a long history of neck and back symptoms with associated numbness/tingling in his fingers. (*Id.*). On examination, Claimant displayed a normal gait and his straight leg raising test was negative, but he had some stiffness in his fingers; a bony enlargement on his right knee with swelling and possible effusion; some redness around the first metatarsophalangeal joint of each foot; and diminished range of motion in the cervical spine, shoulders, elbows, wrists, fingers, lumbar spine, hips, and knees. (Tr. at 656-58). Claimant could walk on his heels and toes, but he appeared unable to adequately perform tandem gait. (Tr. at 658). He was able to squat, but he reported associated knee and back pain. (*Id.*). Dr. Nutter diagnosed Claimant with gout, osteoarthritis, and chronic cervical and lumbar strain. (*Id.*).

Dr. Nutter opined that Claimant could frequently lift and/or carry up to 20 pounds and occasionally lift and/or carry up to 50 pounds; sit for four hours at one time for no more than five hours total during an eight-hour workday; stand for one hour at a time for no more than two hours total during an eight-hour workday; walk for two hours at one

time for no more than three hours total during an eight-hour workday; occasionally handle, finger, and push/pull bilaterally; continuously feel bilaterally; occasionally operate foot controls bilaterally; never crouch, crawl, or climb ladders, ropes, or scaffolds; occasionally stoop and kneel; frequently climb stairs and ramps; and he must avoid all exposure to unprotected heights; can tolerate occasional exposure to moving mechanical parts and operate a motor vehicle occasionally; and endure frequent exposure to vibrations. (Tr. at 661-65).

### C. Prior Administrative Findings

Larry Curnutte, M.D., reviewed the record on January 17, 2019, concluding that the record contained insufficient evidence to assess any physical limitations. (Tr. at 96). His opinion was affirmed by James B. Smith, M.D., on March 22, 2019. (Tr. at 103).

### D. Administrative Hearing Testimony

Claimant testified on September 8, 2022, that he suffered from gout since 1998, and his symptoms progressively worsened, spreading to his hands, elbows, knees, and feet. (Tr. at 416). He alleged a history of back pain symptoms that did not improve with chiropractic treatment. (Tr. at 417-18). Claimant testified that he had a pinched nerve in his back and that his chiropractor advised that his back pain symptoms would never be relieved if he continued to stand on concrete; therefore, he decreased his workdays until he eventually discontinued work. (Tr. at 417). Claimant testified that his back pain symptoms improved with rest, but he experiences flare ups of pinched nerve symptoms a few times per year. (Tr. at 418). He also testified that he has been diagnosed with fibro oculus myalgia and described bilateral shoulder pain and knee pain associated with overuse and possible arthritis. (Tr. at 417-18). Claimant described symptoms of neck pain with associated numbness/tingling in his fingers. (Tr. at 418). He also testified that he

9

takes medication for high blood pressure. (*Id.*). In the early 1990's, Claimant received injections for treatment of carpal tunnel syndrome. (*Id.*). Claimant also testified that his vision has deteriorated over time, and he has been diagnosed with a hernia in his upper abdomen. (*Id.*). Claimant expressed that he had some difficulty sleeping, but was not depressed, other than some issues associated with loss of functioning. (Tr. at 419).

Gilberto Munoz, M.D., testified that there was very limited objective evidence in the record from, or relating to, the relevant time period of January 1, 2003, to December 31, 2009. (Tr. at 433). He noted that Claimant had a history of hypertension, gout, cervical disc disease, and lumbar disc disease that was supported by the record. (*Id.*). Dr. Munoz testified there was no evidence of any end-organ damage and no joint deformities associated with gout, although he did acknowledge acute episodes of associated joint pain symptoms. (*Id.*). He stated there was no imaging to support cervical and lumbar disc disorders. (*Id.*). Dr. Munoz opined that Claimant did not have any severe medically determinable physical impairments during the relevant time period based on the record. (Tr. at 435).

Evelyn Adamo, Ph.D, testified at the hearing that Claimant may have experienced some symptoms of worry and sadness associated with his physical condition, but she found nothing in the record to support a specific chronic mental disorder. (Tr. at 431-32).

Finally, Nancy Shapero, an impartial vocational expert, was asked to consider various hypothetical scenarios that included Claimant's characteristics and an RFC at the medium, light, and sedentary levels of exertion. She provided numerous jobs that existed in significant numbers in the national economy that such an individual could perform. (Tr. at 438-40).

## VI.  Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

Claimant brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. However, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. *Id.* at 520–21.

The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A Court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### VII. Discussion

Claimant states that he has had medical issues since 2003 that keep him from doing day-to-day work, and the symptoms worsen "as time goes by" to the point that he can only do "a little something" for two to three hours at this point. (ECF No. 5 at 3, 4). He mentions that he was reduced to four-day workweeks in 2001, three-day workweeks in 2002, and he had stop working in 2003. (*Id.* at 3-4). He cites his September 8, 2021, knee x-ray showing osteoarthritic changes. (*Id.* at 4, 6). He also notes his diagnosis of gout since 1998, back problems since 2000, and his more recent records for those conditions. (*Id.* at 4). Claimant states that he is hoping for a favorable disability decision. (*Id.*).

The undersigned liberally construes Claimant's Brief as seeking judgment on the pleadings. However, while the undersigned is sympathetic to Claimant's plight, Claimant does not articulate any specific errors in the Commissioner's decision for the Court to evaluate. The Court cannot substitute its judgment for the Social Security Administration. It can only review the record to determine whether the Commissioner applied the correct law and whether the decision is supported by more than a scintilla of evidence. In this case, the ALJ thoroughly considered all of the impairments, alleged symptoms, and records that Claimant mentioned in or attached to his brief. The ALJ properly applied the sequential evaluation process and provided well-reasoned analysis based on the overall

record. His findings are supported by substantial evidence. Claimant does not allege any error that would require the Court to remand the case for further proceedings. *See, e.g., Priester v. Comm'r of Soc. Sec. Admin.,* No. 820CV03231DCCJDA, 2022 WL 1057187, at *9 (D.S.C. Jan. 7, 2022), *report and recommendation adopted,* 2022 WL 884239 (D.S.C. Mar. 25, 2022); *Flor V. D. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-22-3200, 2024 WL 1214287, at *3 (D. Md. Mar. 21, 2024).

### VIII. Proposal and Recommendations

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 5); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 6); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the

Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Berger, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED: January 13, 2025**

_____
Joseph K. Reeder
United States Magistrate Judge